O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARSHDEEP SINGH,<br><br>Petitioner,<br>v.<br><br>MARK BOWEN et al.,<br><br><br>Respondents. | Case No.: 5:26-cv-00867-MEMF-MBK<br><br>**ORDER GRANTING IN PART PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [DKT. NO. 2]** |

Before the Court is the Motion for Temporary Restraining Order and Motion Preliminary Injunction filed by Petitioner Harshdeep Singh. Dkt. No. 2 ("Motion"). For the reasons stated herein, the Motion is GRANTED IN PART: the Court grants the Temporary Restraining Order, and issues an Order to Show Cause why a Preliminary Injunction should not issue, but does not grant a Preliminary Injunction at this time.

## I. Background

### A. Factual Background[1]

Petitioner Harshdeep Singh is a noncitizen currently detained by Respondents pending immigration proceedings. Petition ¶ 18. Singh is currently pursuing an application for asylum, withholding and Protection under the Convention Against Torture. *Id.* Singh is also 20 years old and is seeking Special Immigrant Juvenile Status. *Id.* Singh entered the United States on July 4, 2024. *Id.* ¶ 24. He was processed by ICE and was released on his own recognizance. *Id.* Singh continued and appeared at his hearings as scheduled. *Id.* ¶ 25. Singh has no criminal history. *Id.* ¶ 27.

Singh was arrested at a Walmart and has been detained in DHS custody since February 1, 2026. *Id.* ¶¶ 24, 26. Singh has not been provided a bond hearing before a neutral decisionmaker to determine whether their prolonged detention is justified based on danger or flight risk. *Id.* ¶ 20. He has been in custody since that time. *Id.* ¶ 26.

### B. Procedural History

On February 23, 2026, Singh filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 in this matter. Petition. Singh also filed a Motion for Temporary Restraining Order and Preliminary Injunction on February 23, 2026.[2] Motion.

On February 24, 2026, the Court ordered the Respondents to file a response to the Motion by February 26, 2026, at 5pm. Dkt. No. 5. The Court's Order also ordered Singh to file a Reply by February 27, 2026, at 5pm. *Id.* On February 27, 2026, Respondents filed an Opposition.[3] Dkt. No. 8 ("Opposition"). Singh did not file a reply.

---

[1] Unless otherwise indicated, the following factual background is derived from Singh's Petition for Writ of Habeas Corpus. Dkt. No. 1 ("Petition"). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

[2] The Court notes that it appears that Singh did not comply with Federal Rule of Civil Procedure 65(b)(1)(B) in filing his Motion as the Motion does not include a declaration certifying "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Given that Singh is detained and seeking emergency relief, and in light of the fact that Respondents do not argue that the Motion should be denied for failure to comply with Rule 65, the Court will address the Motion in the merits.

[3] The Court notes that and Respondents conceded that their Opposition was filed late. Opposition at 2 n.1. Respondents have offered no explanation as to why their filing was delayed, nor have they asked this Court to excuse the delay. Nevertheless, given this Court's preference for adjudication of the Motion on the merits, this Court will consider the Opposition's substance. The parties are admonished that this Court may refuse to consider future untimely filings

II. **Applicable Law**

A. **Preliminary Injunctions**

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

B. **Habeas Petitions in the Immigration Detention Context**

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. §§ 1221–1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the Motion of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.' *Id.* (quoting 8 U.S.C. §

1252(f)(1)).[4] This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court established that courts should treat a six-month period of detention as "presumptively reasonable." *Id.* at 700–01. It explained:

> After this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Respondents must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every [noncitizen] not removed must be released after six months. To the contrary, a [noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. In other words, trial courts considering an immigration detainee's habeas petition seeking release must first ascertain if the detainee has demonstrated good reason to believe that, in the reasonably foreseeable future, there is no significant likelihood of removal. Only then does the burden shift to the Respondents to rebut that showing.

Once an immigrant has been "released under an order of supervision," the following rules govern. 8 C.F.R. § 241.13(i)(1). To "revoke an [noncitizen]'s release under this section and return the [noncitizen] to custody," the Service must "determine[] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release," and is entitled to an initial interview after the immigrant's return to custody to allow the immigrant to respond, submit evidence, or otherwise demonstrate that "there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.* § 241(i)(3).

### III. Discussion

This Court first addresses Respondents' only argument in Opposition—that Singh is not entitled to relief beyond a bond hearing[5]—before turning to the merits of the Motion.

---

[4] Where it does not change the meaning, this Court will endeavor to use the term "noncitizen" in place of alien, consistent with the practice of the United States Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023)

[5] The Opposition concedes that—per the entry of final judgment in *Maldonado Bautista*—Singh is entitled to a timely bond hearing. Opposition at 2. To that end, this Court understands the TRO to be unopposed insofar as it asks for a bond hearing.

### A. *Maldonado Bautista* does not limit Singh's potential relief.

In Opposition, Respondents' sole argument turns on the applicability of the final judgment entered in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM. The Court in that case certified a "Bond Eligible Class" as follows:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1226(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Maldonado Bautista*, Dkt. No. 82 at 15. The Court, entering judgment in favor of Petitioners, found that "the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a), are not subject to mandatory detention under § 1225(b)(2), and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." *Maldonado Bautista*, Dkt. No. 94 at 15.

Respondents argue that, "while Petitioner seeks immediate release, to the extent Petitioner would be entitled to any remedy via the TRO application, at most it would be ordering a bond hearing to be held before an Immigration Judge under Section 1226(a)." Opposition at 2.

As an initial matter, neither party cites any authority for the proposition that membership in a class might impact other forms of relief that a party may seek individually. The Opposition references no cases beyond *Maldonado Bautista*. *See generally id.* But that case's orders on final judgment and class certification do not appear to suggest that all members of the Bond Eligible Class are *only* entitled to the relief granted at final judgment. Nor is it clear that Singh has received notice that he is a member of the Bond Eligible Class, such that he could opt out of whatever binding effects that judgment could have on him. *See* 11A Wright & Miller's Federal Practice & Procedure § 1789.1 (3d ed.) (noting that "the Constitution requires a right to opt out, as well as receipt of notice of the suit"); *see also Silber v. Mabon*, 18 F.3d 1449, 1451 n.2 (9th Cir. 1994) ("Pursuant to Rule 23(c)(2), an absent class member must be given notice of his right to opt out of the class and to pursue his claim individually.").To that end, because Respondents do not support their argument that judgment in *Maldonado Bautista* limits Singh's ability to seek relief beyond a bond hearing, this Court will consider the merits of Singh's request.

### B. Applying the *Winter* factors, Singh is entitled to a temporary restraining order.

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Given the urgency of this matter, this Court has only considered whether Singh is entitled to a temporary restraining order. Having determined below that he is entitled to a temporary restraining order, the Court will issue an order to show cause as to why a preliminary injunction should issue, which should permit further development of the record and additional briefing.

The Petition argues two grounds upon which a temporary restraining order should be granted. First, Singh argues that he has been unlawfully denied a bond hearing, pursuant to 8 U.S.C. § 1226(a) and APA. Petition ¶¶ 8, 38-58. Second, Singh argues that his continued detention is unconstitutional under the Fifth Amendment. *Id.* ¶¶ 50-55.

The Court applies the *Winter* factors to Singh's claims below.

i. The first *Winter* factor, likelihood of success on the merits, is met.

Singh argues that he is entitled to a release order because the Government violated both due process and the APA by re-detaining him without notice and an opportunity to be heard. *See generally* Petition; Motion. For the reasons below, he is likely to succeed on the merits of his Fifth Amendment claim, so the Court need not evaluate the likelihood of success on Singh's APA claim for the purposes of the instant Motion. Accordingly, the first *Winter* factor is met.

The Motion argues that Singh's prolonged detention without a bond hearing violates due process. Motion at 5-6. Importantly, the Respondents do not meaningfully dispute that Petitioner has the right to notice and the opportunity to be heard on his redetention, consistent with the applicable regulations. *See generally* Opposition.

"'The Fifth Amendment entitles [noncitizens[6]] to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025) (quoting *Reno v. Flores*, 507

---

[6] Where it does not change the meaning, this Court endeavors to use the term "noncitizen" in place of alien, consistent with the practice of the Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' Alien, Webster's Third New International Dictionary 53 (2002), while the word noncitizen, which is synonymous, *see* Alien and Noncitizen, American Heritage Dictionary of English Language 44, 1198 (5th ed. 2011), avoids such connotations. Thus, noncitizen seems the better choice.").

U.S. 292, 306 (1993)). Accordingly, immigration detainees pending removal are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).[7]

Due process claims have two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). Singh is likely to succeed in demonstrating that both elements exist here. As to the first element, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This Court finds, and Respondents do not contest, that Singh will likely prevail in demonstrating that his interest in remaining out of custody was a protected liberty interest under the Fifth Amendment. So, too, for the second element: Singh is likely to prevail in establishing that detention absent any form of notice or a hearing effectively deprived him of his procedural due process rights. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). And Singh alleges he was given no opportunity to be heard at all. Petition ¶¶ 30, 38-40; Motion at 5-6. Respondents' Opposition does not dispute Singh's factual account or attempt to justify the lack of process given to Singh. To that end, he will likely prevail on the second factor.

This Court's conclusion is consistent with other recent district court rulings. *See, e.g.*, *Kiwana v. LaRose*, No. 3:25-CV-3678-JES-SBC, 2026 WL 102661, at *2 (S.D. Cal. Jan. 14, 2026);

---

[7] In light of *J.G.G.*, it appears that the applicable laws, namely 8 C.F.R. § 241.13(i)(3) and 8 C.F.R. § 241.4(*l*)(1), are the means by which ICE has determined it will meet the due process rights of putative detainees. Under the former, an immigrant who has been released under an order of supervision "will be notified of the reasons for revocation of his or her release." 8 C.F.R. § 241.13(i)(3). Promptly after the immigrant's return to custody, "the Service will conduct an initial informal interview . . . to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* At that interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.* "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.* Similarly, under Section 241.4(*l*)(1), noncitizens are entitled to "prompt[]" notification "of the reasons for revocation of his or her release or parole." 8 C.F.R. § 241.4(*l*)(i).

In addition, the Court notes that these regulations may inform how the Respondents can comply with this order, should they attempt to redetain Singh in accordance with his constitutional protections.

*Bedrosian v. Noem*, No. 5:25-CV-02814-KES, 2026 WL 127800, at *6 (C.D. Cal. Jan. 15, 2026). Particularly instructive is the approach in *McSweeney v. Warden of the Otay Mesa Det. Facil.*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376 (S.D. Cal. Oct. 24, 2025). There, the court found that a detention which did not properly notify the petitioner of the reasons for revocation of release, or grant him an interview to allow him to respond to the reasons for revocation, violated the petitioner's due process rights. *Id.* at *5–7. Because there was no interview opportunity following the notice, the court found that the procedural deficiencies rose to the level of procedural due process violations. *Id.* In its words, "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons." *Id.*

To that end, Singh has shown a likelihood of success on his constitutional claim.

      ii. <u>The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.</u>

To establish the second *Winter* requirement, Singh must demonstrate a likelihood that he will suffer irreparable harm without a temporary restraining order. Respondents do not address this factor, nor do they argue that Singh has failed to make the requisite showing. This Court finds that the second *Winter* requirement is met.

As a threshold matter, Singh has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). The Government's discretion to issue removal orders is not at issue here. Instead, Singh argues that the Government has not complied with the legal process that is due to him as a detained noncitizen. And "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, Singh's ongoing detention of indeterminate length inherently risks him irreparable harm, as it is not clear when he will be processed, released, or removed. Thus, as this Court has already found that Singh has a sufficient likelihood of success on the merits of his challenges to his current detention—in part based upon Singh's constitutional rights—this Court finds the second *Winter* factor is met.

    iii. <u>The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.</u>

When, as here, the nonmoving party is a governmental entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court thus considers the third and fourth factors—whether the "balance of equities" is in Singh's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

  The balance of equities appears to tilt in Singh's favor. It is true that the Government has a strong interest in the enforcement of federal immigration law. But the Government "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law. *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). To that end, "[a]ny additional administrative costs to the government are far outweighed by the considerable harm to plaintiffs' constitutional rights in the absence of the injunction." *Hernandez*, 872 F.3d at 996. "Faced with such a conflict between [the minimal cost to implement additional due process safeguards] and preventable human suffering," this Court finds ample reason to conclude that "the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). This is particularly true given that Respondents do not argue otherwise, nor do they allege that the issuance of a TRO in this matter would cause them harm at all. And, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Respondents do not contend that this Court should find otherwise. In sum, the third and fourth *Winter* factors are met here.

  **C. A release order is the appropriate relief.**

  Respondents' argument in support of *Maldonado Bautista* limiting Petitioner's relief suggests that a full grant of the TRO—including ordering Singh's immediate release—is not an appropriate form of relief for this Court to grant. *See* Opposition at 2. This Court has already addressed why it may consider relief beyond the grant of a bond hearing. *See* Section III.A *supra*. For the reasons below, it determines that Singh is entitled to a release order.

  First, Singh's prompt release is the remedy that will best return Singh to the status quo and restore his position as it was prior to the detention that Singh contends was in violation of his

constitutional and statutory protections. The purpose of a temporary restraining order is "to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." 11A Wright & Miller's Federal Practice & Procedure § 2951 (3d ed.). Though the Ninth Circuit has not opined on the matter of scope of preliminary relief in this specific context, other courts in this Circuit have taken a similar approach. *See, e.g.*, *F.M.V. v. Wofford*, No. 1:25-CV-01381, 2025 WL 3083934, at *7 (E.D. Cal. Nov. 4, 2025).

Second, in any event, this Court permits the Government to remedy the procedural deficiency at issue through its Orders issued *infra*. This Court's resolution of this Motion—to order Respondents to release Singh from custody and not redetain him absent compliance with due process and his legal protections—in effect permits the Government to follow the appropriate steps to reattempt Singh's detention.

## IV.  Conclusion

For the foregoing reasons, the Motion is GRANTED IN PART. Singh's request for a temporary restraining order is GRANTED. This Court will rule on the request for a preliminary injunction following the Order to Show Cause hearing described below.

1. Respondents are ORDERED to release Singh from custody (and return to him his personal belongings) within forty-eight (48) hours,[8] and they may not redetain him without compliance with 8 C.F.R. § 241.4(*l*)(1), 8 C.F.R. § 241.13(i), and 8 U.S.C. § 1231;
2. Respondents are enjoined from relocating Singh outside of the Central District of California pending final resolution of this matter;
3. Respondents shall not impose any release restrictions on Singh, such as electronic monitoring, unless deemed necessary at a future pre-deprivation bond hearing.[9]

---

[8] This Court understands, based on Respondents' representations from hearings in similar immigration habeas cases, that Respondents believe that forty-eight hours is a reasonable amount of time to effectuate release.

[9] Restraints not shared by members of the public renders an individual in custody within the meaning of 28 U.S.C. § 2241. *See Hensley v. Municipal Court, San Jose Milpitas Judicial Dist., Santa Clara County, California*, 411 U.S. 345, 351 (1973) (holding that a person is in custody if the person "is subject to restraints 'not shared by the public generally'" and the person's "freedom of movement rests in the hands of state judicial officers"); *Jones v. Cunningham*, 371 U.S.

4. This Court orders Respondents to show cause, in writing, as to why a preliminary injunction should not issue.

    a. Respondents' brief is due at 5 PM on Monday, March 9, 2026. Singh may file a response brief by Friday, March 13, 2026.

    b. The parties may stipulate to a different briefing schedule via joint stipulation filed by 5 PM on Friday, March 7, 2026. Should the parties wish to extend either briefing deadline, the parties should also stipulate that this temporary restraining order may remain in effect (without converting to a preliminary injunction) through this Court's decision on the preliminary injunction.

    c. The parties' briefing on the preliminary injunction should address whether the granting of this TRO renders the PI request, and the habeas petition itself, moot.

5. The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order by Friday, March 7, 2026.

**IT IS SO ORDERED.**

Dated: March 3, 2026

                              MAAME EWUSI-MENSAH FRIMPONG

                              United States District Judge

---

236, 238-39 (1963) (finding that the "chief use of habeas corpus has been to seek the release of persons held in actual, physical custody in prison or jail. Yet English courts have long recognized the writ as a proper remedy even though the restraint is something less than close physical confinement"). As such, prospective release restrictions, such as electronic monitoring constitute liberty constraints which do not afford petitioners complete relief.